UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ADEL ABUZAID, ZAID ABUZAID, ARREF H.
KASSEM, MOHAMED MOHAMED,

                              Plaintiffs,

      -against-                          1:08-CV-1213 (LEK/RFT)

JAMIE WOODWARD, Acting Commissioner, New
York State Department of Taxation and Finance,

                             Defendant.

## MEMORANDUM-DECISION AND ORDER

On April 21, 2009, Plaintiffs Adel Abuzaid ("Adel"); Zaid Abuzaid ("Zaid"), Arref H.

Kassem ("Kassem"), and Mohamed Mohamed ("Mohamed") (collectively, "Plaintiffs") filed the

instant First Amended Complaint (Dkt. No. 23) seeking injunctive relief to redress the alleged

deprivations of their federal civil rights under the Fifth, Eighth, and Fourteenth Amendments to the

United States Constitution.  Plaintiffs bring this suit pursuant to 42 U.S.C. § 1983 and § 1988.  First

Am. Compl. ¶ 1.  Plaintiffs allege that Defendant Jamie Woodward ("Defendant"), in his capacity as

Acting Commissioner of New York State's Department of Taxation and Finance, violated their

Fifth Amendment right to be free of successive punishment by imposing fees pursuant to New York

Tax Law § 481 ("§ 481") subsequent to Plaintiffs' guilty plea and sentencing for the same offense

under New York Tax Law § 1814 ("§ 1814"); Plaintiffs further allege that the fees imposed by

Defendant were excessive and, thus, violated their Eighth Amendment and Fourteenth Amendment

Due Process Rights.  Id.  ¶¶ 15-22.   On August 21, 2009, Plaintiffs filed a Motion to correct/amend

their Complaint, requesting that Fuad Azzubaidi ("Azzubaidi" or "Proposed Plaintiff") be added as

1

a plaintiff to the action.  Pls.' Mot. to Am. Compl. (Dkt. No. 40).  Proposed Plaintiff would assert

the same claims presented in Plaintiffs' First Amended Complaint.  Id.  Presently before the Court

are Plaintiffs' Motion for summary judgment (Dkt. No. 22); Defendant's Cross-Motion for

summary judgment (Dkt. No. 31); and Plaintiffs' Second Motion to amend/correct their Complaint

(Dkt. No. 40).

## I.      BACKGROUND

New York State collects a cigarette tax in the amount of $15.00 per ten-pack carton of

cigarettes.  The State collects this tax by selling New York State Sales Tax Stamps to stamping

agents who affix the stamps to cigarette cartons to be sold within the state and selling these stamped

cartons to cigarette retailers.  See N.Y. TAX LAW § 471.  The cost of the tax is then added to the

sales price of the cigarettes as they are passed down the distribution chain and is ultimately to be

borne by the consumer.  See N.Y. TAX LAW § 471; 20 NYCRR § 74.1(b)(1).

Plaintiffs are owners of small newsstands that sell cigarettes at the retail level.  Mem. of Law

in Supp. of Pls.' Cross Motion for Summ. J. (Dkt. No. 22-1) ("Pls.' Mem.") at 2.  Defendant

initiated a "sting operation" targeting such retailers' purchase for sale of cigarettes bearing

counterfeit tax stamps so as to avoid paying the added tax cost of authentic stamps.  Pls.' Mem. at 2;

Def.'s Mem of Law in Opp'n to Pls.' Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for

Summ. J. (Dkt. No. 31-12) ("Def.'s Mem") at 2-3.  This operation resulted in the arrest, indictment

and eventual guilty pleas and sentencing of Plaintiffs under New York Tax Law § 1814(e).[1]  Def.'s

---

[1]Subsection (e) of New York Tax Law § 1814 has since been redesignated as subsection (c).
2009 N.Y. Sess. Laws ch. 57, pt. V-1, subpt. I, ,§ 28.  That section provides: " Any person, other
than an agent licensed by the commissioner, who willfully possesses . . . for the purpose of sale ten
thousand or more cigarettes subject to the tax imposed by section four hundred seventy-one of this
chapter in any unstamped or unlawfully stamped packages or who willfully sells or offers for sale

Mem at 2.  None of the Plaintiffs served jail time, but all had their license to sell cigarettes revoked. Am. Compl. ¶¶ 11-14.  Additionally, Plaintiffs Adel, Zaid, and Kassem entered into stipulations with the Attorney General's Office to forfeit seized assets.  Id.  None of the parties contest their guilt in these criminal violations.  Pls.' Mem. at 4.

Subsequent to the pleas and sentencing, Defendant imposed additional penalties on Plaintiffs pursuant to New York Tax Law § 481.1(b)(I) in the amount of $150 per carton of unlawfully stamped cigarettes possessed.  First Am. Compl. ¶¶ 11-14.  Plaintiffs each received a notice of determination ("NOD") informing them of these penalties.[2]  Statement of Material Facts (Dkt. No. 22-2) ("Pls.' SMF") ¶¶ 7-8, Exh. E.  Each NOD stated that the sum owed by the recipient was a penalty assessment and that no tax amount was owed.  Id.  The underlying offense for these penalties was the same possession of unlawfully stamped cigarettes for which Plaintiffs had criminal liability.  First Am. Compl. ¶¶ 11-14.

Plaintiff Adel challenged the assessment leveled against him in the Division of Tax Appeals ("DTA").  On March 19, 2009, an ALJ sustained the assessment.  Comiskey Aff. (Dkt. No. 31-4) ¶ 29.  Adel filed an exception to that determination, which he later withdrew.  Pls.' Mem of Law in Opp'n to Def.'s Mot. for Summ. J. and in Reply to Def.'s Response to Pls.' Cross-Mot. for Summ. J. (Dkt. No. 38) ("Pls.' Reply Mem") at 7.  Adel never made any payments to the Department. Def.'s Mem at 5.  On June 1, 2009, the Department of Taxation and Finance ("the Department")

---

ten thousand or more cigarettes in any unstamped or unlawfully stamped packages in violation of article twenty of this chapter shall be guilty of a class E felony."

[2]The penalties described in the NODs were: Adel (Assessment L-02793008-6) $93,000; Zaid's (Assessment L-027919999-2) $267,300; Kassem (Assessment L-027865802-2) $108,000; Mohamed (Assessment L-027921455-6) $200,250 and (Assessment L-028009935-8) $28, 838.50.

cancelled the assessments against Adel, Mohamed, and Kassem.  Comiskey Aff. (Dkt. No. 31-4) ¶ 31; Ex. F (Dkt. 31-10); Coney Aff. (Dkt. No. 39-7) 4-5.  The Department subsequently refunded payments made by Plaintiffs Kassem and Mohamed.  Def.'s Mem. at 5.

On August 21, 2009, Plaintiffs moved to amend their Complaint for a second time to add Fuad Azzubaidi as a plaintiff to this action.  Pls.' Second Mot. to Am. Compl. (Dkt. No. 40). Plaintiffs' assert that Proposed Plaintiff Azzubaidi is in "a sustainably similar position as the other plaintiffs" because he "was arrested in the same sting operation as the other plaintiffs, he pled guilty to the substantially same activity as the other plaintiffs, defendant has assessed a penalty for the same conduct to which he pled guilty, and defendant has sought enforcement of the penalty." Marchelle Aff. (Dkt. 40-1) ¶¶ 4-5.  On November 13, 2006, approximately seven months after Azzubaidi entered a guilty plea to the criminal offenses associated with his possession of unlawfully stamped cigarettes, Defendant assessed a penalty pursuant to § 481(1)(b)(i) for the same conduct.[3] Mot. to Am. Compl. Exh. A ¶ 15.  Azzubaidi filed an administrative appeal with the DTA on the ground that the assessment was a violation of both the state and federal Constitutions.  On March 5, 2009, the ALJ determined that this assessment should be reduced, but sustained the assessment in the lesser amount.  Aff. Michael Glannon (Dkt. No. 47-2).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[3]Azzubaidi received notice of Assessment L-02791997506 describing penalties totaling $271, 950.

party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Beard v. Banks, 548 U.S.

521, 529 (2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  A court must "'resolve

all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party

opposing the judgment.'"  Brown v. Henderson, 257 F.2d 246, 251 (2d Cir. 2001) (quoting Cifra v.

General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).  "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary

judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

    If the moving party meets its initial burden of demonstrating that no genuine issue of

material fact exists for trial, the nonmovant "must do more than simply show that there is some

metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S.

574, 586 (1986) (citations omitted).  The nonmovant "must come forth with evidence sufficient to

allow a reasonable jury to find in her favor."  Brown, 257 F.3d at 251 (citation omitted).  The

nonmoving party "may not rely merely on allegations or denials in its own pleadings" and bald

assertions unsupported by evidence are insufficient to overcome a motion for summary judgment.

FED. R. CIV. P. 56(e)(2); see Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins.

Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

## III.   DISCUSSION

### A.   Joinder of Proposed Plaintiff Fuad Azzubaidi

    Generally, leave to amend should be freely given.  FED. R. CIV. P. 15(a); Foman v. Davis,

371 U.S. 178, 182 (1962); Rusyniak v. Gensini, 629 F. Supp. 2d 203, 212 (N.D.N.Y. 2009).

However, where the amendment is futile because it fails to state a claim or would otherwise be

subject to dismissal, a court is justified in denying the amendment.  Foman, 371 U.S. at 182; Evac,

LLC v. Pataki, 89 F. Supp. 2d 250, 262 (N.D.N.Y. 2000).

Under the doctrine announced in Younger v. Harris, 401 U.S. 37 (1970), federal courts generally must abstain from exercising jurisdiction over constitutional claims being adjudicated in state proceedings.  The doctrine originally applied to criminal proceedings pending in state courts, but it now pertains equally to cases involving state administrative proceedings.  See, e.g., Middlesex County Ethics Comm v. Garden State Bar Ass'n, 457 U.S. 423 (1982); Diamond "D" Construction Corp. v. McGowan, et al., 282 F.3d 191, 198 (2d Cir. 2001).  The doctrine, developed in the interest of comity and the protection of "Our Federalism," recognizes that "ordinarily a state proceeding provides an adequate forum for the vindication of federal constitutional rights."  Cullen v. Fliegner, 18 F.3d 96, 103 (2d Cir. 1994).  Abstention, under the doctrine, applies when (1) a state proceeding is ongoing, which (2) implicates an important state interest, and (3) the state proceeding provides the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims.  Diamond "D", 282 F.3d at 198.  The requirement that a state proceeding be "ongoing," relates to the time when the federal action is initiated.  Hansel v. Town Court for Town of Springfield, NY, 56 F.3d 391, 393 (2d Cir. 1995) (citing Dubinka v. Judges of Superior Court of the State of California for the County of Los Angeles, 23 F.3d 218, 223 (9th Cir. 1994)); see also Blackwelder v. Safnauer, 689 F. Supp. 106, 117 (N.D.N.Y. 1988); Rolle v. McCarthy, 2005 WL 5885366 at *4 (E.D.N.Y. June 21, 2005).

Plaintiffs filed their Complaint on November 10, 2008, thereby initiating the action that Azzubaidi now seeks to join.  On July 10, 2007, Azzubaidi filed a petition with the DTA challenging the assessment Defendant leveled against him.  That proceeding was completed when the ALJ issued a determination on March 5, 2009, upholding a reduced assessment against

6

Azzubaidi.  The fact that the state proceeding is now complete, however, does not alter the requirement under Younger that no state proceeding be ongoing at the time of filing the federal action.  See Dubinka, 23 F.3d at 223 ("even if appellants' trials were completed at the time of the district court's decision, the state court proceedings were still pending for Younger abstention purposes.").  Thus, at the relevant time, a state administrative proceeding was "ongoing."

The second and third conditions triggering abstention under Younger are also met with regard to the action Azzubaidi proposes to join.  The claims in Plaintiffs' Complaint implicate New York State's fiscal policies and tax enforcement capacities.  These are obviously well established and important state interests.  See, e.g., Tully v. Griffin, 429 U.S. 68, 73 (1976).  The third condition, that the federal plaintiff have an adequate opportunity for judicial review of his federal claims in the state proceeding is also satisfied.  Decisions by the Tax Appeals Tribunal are appealable pursuant to New York Civil Practice Law and Rules Article 78.  See N.Y. TAX LAW § 2016.  Article 78 proceedings provide plaintiffs with an adequate forum to present their federal claims.  Christ the King Reg'l High Sch. v. Culvert, 815 F.2d 219, 224-25 (2d Cir. 1987); McCulley v. N.Y.S. Dept. of Envtl. Conservation, 593 F. Supp. 2d 422, 433 (N.D.N.Y. 2006) (Kahn, J.).

Because the three conditions triggering abstention under Younger are met with respect to Azzubaidi, Defendant could file a Motion to dismiss for lack of jurisdiction if Azzubaidi were joined pursuant to the proposed amendment.  Given this, granting Plaintiffs' Motion to amend Complaint (Dkt. No. 40) is futile, and Plaintiffs' Motion (Dkt. No. 40) is, therefore, denied.

### B.    Plaintiff Adel's Claims are Subject to Younger Abstention

Plaintiff Adel was also pursuing a challenge in the DTA to the assessment leveled against him at the time of filing the federal action.  Plaintiffs do not dispute this but contend that, because

7

he has discontinued the state administrative proceeding, Younger abstention does not apply.  Pls.'
Reply Mem at 7.  For the reasons stated above, this argument fails.  At the date of filing, Adel's
state proceeding was ongoing.  This is the relevant date for Younger abstention.  Adel does not
contest the presence of the other two conditions required for a court to abstain under Younger.  Id.
The Court must, therefore, abstain and grant Defendant's Motion (Dkt. No. 31) as to Plaintiff Adel.

### C.    Mootness of Claims by Plaintiffs Mohamed, and Kassem

Article III of the Constitution demands that federal courts only decide live cases or
controversies.  See Irish Lesbian and Gay Org. v. Giuliani, 143 F.3d 638, 647 (2d Cir. 1998).
Defendant argues that Plaintiffs Mohamed and Kassem's claims fail to present a live case and
should be dismissed as moot.  Def.'s Mem. at 6.

An action becomes moot "when interim relief or events have eradicated the effects of the
defendant's act or omission, and there is no reasonable expectation that the alleged violation will
recur."  Id.  "A moot case may still be justiciable, however, if the underlying dispute is 'capable of
repetition, yet evading review.'"  Van Wie v. Pataki, 267 F.3d 109, 113 (2d Cir. 2001) (quoting
Knaust v. City of Kingston, 157 F.3d 86, 88 (2d Cir. 1998).  In the absence of a class action, this
exception to the mootness doctrine applies where "(1) the challenged action [is] in its duration too
short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable
expectation that the same complaining party [will] be subjected to the same action again."
Weinstein v. Bradford, 423 U.S. 147, 149 (1975).  Finally, where a case has been mooted by the
defendant's voluntary cessation of a challenged practice, a court is not deprived of its power to
determine the legality of the practice, though it may, in its discretion, dismiss the case as moot.  City
of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982); Ahrens v. Bowen, 852 F.2d 49, 52

8

(2d Cir. 1998). "When a defendant does attempt to obtain dismissal on mootness grounds in such a case, the test is a 'stringent' one." Ahrens, 852 F.2d at 52 (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199 204-04 (1968)). Nevertheless, "the voluntary cessation of allegedly illegal activities will usually render a case moot "if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Granite State Outdoor Adver., Inc. v. Town of Orange, Connecticut, 303 F.3d 450, 451 (2d Cir. 2002) (quoting Cambell v. Greisberger, 80 F.3d 703, 706 (2d Cir. 1996).

On June 1, 2009, the Department permanently canceled the assessments against Adel, Kassem, and Mohamed. Comiskey Aff. ¶¶ 31-32; Coney Aff.¶¶ 4-5. Plaintiffs only refutation of the permanency of this cancellation is the conclusory statements contained in the affidavit of attorney Vecchio, in which he states that he "believes that the assessments . . . may be reinstated or assessed again upon the same transactions." Vecchio Aff. ¶ 5. Such bald assertions without supporting evidence are insufficient to overcome a motion for summary judgment. See Carey, 923 F.2d at 21.

Having shown that there is no reasonable expectation that the alleged violation will recur, Defendant must also demonstrate that the effects of the alleged violation have been eradicated. Plaintiff Mohamed does not allege experiencing any adverse effects from the cancelled assessment. See Pls.' Reply Mem. 2-4. The Court, therefore, finds his claims moot.

Plaintiff Kassem does assert adverse effects insofar as he has not been fully compensated for the seizure and auctioning of his car in satisfaction of the now-cancelled assessment. See Kassem Aff. (Dkt. No. 38-2) ¶¶ 2-8. Issues of material fact remain as to whether Kassem has been fully

9

compensated.  For the above reasons, the Court grants Defendant's Motion (Dkt. No. 31) with regard to Plaintiff Mohamed and denies that Motion with regard to Plaintiff Kassem.

### D.       Jurisdiction of the Court under the Tax Injunction Act

The Tax Injunction Act ("TIA") provides, "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  The Act thus removes jurisdiction from district courts where an action involves the assessment of state taxes and the state offers adequate remedies.  The TIA, however, does not apply to the instant action, which involves an assessment of a penalty, not a tax.  The correctness of this characterization is evident by reference to the NODs provided by Defendant to Plaintiffs, which indicate that the assessments are penalties, not taxes.  See Pls.' SMF, Exh. E.  Moreover, Section 481(1)(b)(i) allows the commissioner to impose "penalties" not taxes.  N.Y. TAX LAW § 481(1)(b).  The words tax and penalties "are not interchangeable one for the other . . . . if an exaction be clearly a penalty it cannot be converted into a tax by the simple expedient of calling it such."  United States v. LaFranca, 282 U.S. 568, 572 (1931); see also RTC Commercial Assets Trust 1995-NP3-1 v. Phoenix Bond & Indem. Co., 169 F.3d 448, 457-58 (7th Cir. 1999) ("[A] penalty is not a tax for TIA purposes.").  Moreover, for reasons discussed below, New York Tax Law § 470 makes clear that only stamping agents are liable for the payment of the cigarette tax to the state.  The TIA, therefore, does not apply to the instant action.  The Court has jurisdiction over this action pursuant to 28 U.S.C. 1331 and 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4).

### E.       Plaintiffs' Fifth Amendment Claim

Plaintiffs assert that the imposition of penalties under § 481(1)(b) subsequent to their

criminal prosecution under § 1814(e) constitutes double jeopardy in violation of their Fifth

Amendment rights.  See Pls.' Mem. at 7-8.  "[T]he Double Jeopardy Clause protects against three

distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for

the same offense after conviction; and multiple punishments for the same offense."  United States v.

Halper, 490 U.S. 435, 440 (1989), overruled on other grounds by Hudson v. United States, 522 U.S.

93 (1997).  "The Clause protects only against the imposition of multiple *criminal* punishments for

the same offense."  Hudson, 522 U.S. at 99 (emphasis in original).  The Supreme Court has

recognized that "[w]hether a particular punishment is criminal or civil is, at least initially, a matter

of statutory construction. A court must first ask whether the legislature, in establishing the

penalizing mechanism, indicated either expressly or impliedly a preference for one label or the

other."  Id. (internal quotations omitted).  Where the legislature intended to establish a civil penalty,

a court must ask "whether the statutory scheme was so punitive either in purpose or effect, as to

transfor[m] what was clearly intended as a civil remedy into a criminal penalty."  Id. (internal

quotations omitted).  The Supreme Court has provided a list of factors ("the Kennedy Factors") in

making this last determination.  See Kennedy v. Mendoza, 372 U.S. 144, 168-69 (1963).  These

factors are:

> (1) [w]hether the sanction involves an affirmative disability or restraint; (2) whether it has
> historically been regarded as a punishment; (3) whether it comes into play only on a finding of
> *scienter*; (4) whether its operation will promote the traditional aims of punishment-retribution
> and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an
> alternative purpose to which it may rationally be connected is assignable for it; and (7) whether
> it appears  excessive in relation to the alternative purpose assigned.

Hudson, 522 U.S. at 99-100 (internal quotations omitted).  Courts are to evaluate the Kennedy

factors in relation to the plain language of the statute.  Id.  In conducting this inquiry, "'only the

11

clearest proof" will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id. (quoting United States v. Ward, 448 U.S. 242, 249 (1980).

> **(I)    The Legislature Intended Section 481 to be a Civil or Quasi-Criminal Penalty**

In adopting § 481(1)(b)(i), the New York Legislature did not intend to create  a criminal sanction.  Notably, the penalties imposed under the prosecution and the enforcement of those penalties occur through an administrative procedure.  This is prima facie evidence that the Legislature intended to create a civil sanction.  See Hudson, 522 U.S. 93, 103 (1997).

Aspects of § 481(1)(b)(1), however, indicate that the Legislature did not clearly intend to create a purely civil penalty either.  Notably, that subsection provides, "the commissioner may impose a *penalty*."  N.Y. TAX LAW § 481(1)(b)(1) (emphasis added).  In contrast, §§ 481(1)(c) and 481(1)(d) both provide "the commissioner may impose a *civil penalty*."  N.Y. TAX LAW §§ 481(1)(c), 481(1)(d) (emphasis added).  Where particular language in one section of a statute is omitted in another section of the same statute, the presumption is that the exclusion was purposeful. Russello v. United States, 464 U.S. 16, 23 (1983).  Courts should not treat differences in statutory language as insignificant, nor "ascribe this difference to a simple mistake in draftsmanship."  United States v. Naftalin, 441 U.S. 768, 773 (1979).  Moreover, § 481(1)(b) adjusts the penalties it imposes depending upon the offender's mental state.  Compare N.Y. TAX LAW § 481(1)(b)(i) (setting penalties "not more than one hundred fifty dollars for each two hundred cigarettes") and § 481(1)(b)(ii)(A) (imposing a penalty "not less than thirty dollars but not more than two hundred dollars" for the same quantity of cigarettes where the offender is "knowingly in possession").  Assessing penalties in accordance with an offender's mental state is typical of criminal penalties and

makes little sense in the context of civil penalties, which "are designed as a rough form of 'liquidated damages' for the harms suffered by the Government as a result of defendant's conduct." United States v. Usery, 518 U.S. 267, 283-84 (1996) (quoting Rex Trailer Co. v. United States, 350 U.S. 148, 153-54 (1956).

Despite these conflicting signals, the Court finds that the Legislature intended for § 481(1)(b)(i) to create civil or quasi-criminal penalties.

### (ii) Section 481 Operates as a Criminal Penalty

Even assuming the Legislature intended to adopt a civil sanction, the Court finds that § 481(1)(b)(i) effectively operates as a criminal penalty. Having used the Kennedy factors as guideposts, the Court finds that the purpose and effect of § 481(1)(b)(i) is to deter criminal conduct, not to ensure compliance with a civil obligation. The Court notes that while not all of the factors support the determination that § 481(1)(b)(i) effects such a punitive scheme that it must be considered to operate as a criminal penalty, "the absence of these elements are not dispositive" See Dye v. Frank, 355 F.3d 1102, 1105 (7th Cir. 2004) (citing Kennedy, 372 U.S. at 169).

Section 481(1)(b)(i) does not impose an affirmative disability or restraint.[4] The section has also not historically been viewed as a criminal punishment. The remaining Kennedy factors, however, strongly support viewing § 481(1)(b)(i) as effecting a criminal penalty.

As noted above, the imposition of penalties under § 481(1)(b) is dependent upon the offender's mental state, with more severe penalties resulting when the violator "knowingly" possesses the unlawful cigarettes. Compare N.Y. TAX LAW § 481(1)(b)(i) with § 481(1)(b)(ii)(A).

---

[4]Plaintiffs' licences to sell cigarettes were revoked. However, the revocation of a license or other "privilege voluntarily granted" by the state is "characteristically free of the punitive criminal element." Helvering v. Mitchell, 303 U.S. 391, 399 (1938); see also Hudson, 522 U.S. at 104.

Inquiry under the fourth Kennedy factor suggests that § 481(1)(b)(i) is meant to punish and deter criminal activity, not to ensure compliance with a civil tax obligation. Section 481(1)(b)(i) imposes penalties for the possession of unlawfully stamped cigarettes, not for failure to pay taxes owed. This is clear from the fact that retailers, such as Plaintiffs, do not have any civil tax obligation to pay cigarette tax to the state. New York Tax Law § 471(2) makes this explicit in providing that "the tax [on cigarettes] shall be advanced and paid by the agent. The *agent* shall be liable for the collection and payment of the tax on cigarettes imposed by this article and shall pay the tax to the tax commission by purchasing, under such regulations as it shall prescribe." (emphasis added). Thus, stamping agents, but not retailers or those further down the distribution chain are obligated to pay the tax.

New York Tax Law § 471(2) enables the Department to prescribe regulations to effectuate the collection of the tax provided for by the statute. The Department adopted 20 NYCRR § 74.1 for this purpose. Subsection (b)(1) of that regulation provides, "An agent will be liable for the collection and payment of the tax on the possession of cigarettes for sale within the State and shall pay the tax to the Department of Taxation and Finance by purchasing stamps." 20 NYCRR 74.1(b)(1). The regulation goes on to state that, "[i]f payment of the tax is not evidenced by the presence of a proper cigarette tax stamp, such cigarettes are presumed taxable and any dealer (other than an agent) or consumer in possession thereof may be held liable for the cigarette tax." 20 NYCRR 74.1(b)(2)(ii).

Defendant points to this latter subsection as evidence that Plaintiffs and other retailers have tax liability. Def.'s Mem. at 9-10. However, Defendant has no power to impose taxes on retailers. New York Tax Law § 471(2) enabled the Department to adopt regulations to effectuate the scheme

announced in that statute, a scheme which imposed liability only on agents.  It did not authorize the Department to expand that liability to classes not authorized by the Legislature.  See United States Steel Corp. v. Gerosa, 7 N.Y.2d 454 (1960) ("the State Legislature has the exclusive power to tax, including the power to determine the class of persons to be taxed, which it may delegate . . . [b]ut any taxes imposed by the latter must be within the expressed limitations and, unless authorized, a tax so levied is constitutionally invalid.").  Section 481(1)(b)(i), nevertheless, empowers the commissioner to impose a "penalty" on non-agents in possession of unlawfully stamped cigarettes.  Because non-agents have no cigarette tax liability the penalties so imposed cannot be meant to deter noncompliance with Plaintiffs' tax obligations.  Thus, the only plausible purpose for the penalties is the deterrence of the criminal conduct of possessing cigarettes with counterfeit stamps.

With regard to the fifth Kennedy factor, the behavior to which § 481(1)(b) applies is already a crime.  Compare N.Y. TAX LAW § 481(1)(b)(ii) with § 1814.  Finally, the sixth Kennedy factor, whether an alternative purpose to which it may rationally be connected is assignable follows from the discussion above regarding the fourth factor.  Plaintiffs have no tax liability for cigarettes.  N.Y. TAX LAW § 470(2).  Section 481(1)(b)(i) imposes penalties for conduct that is designated elsewhere as criminal.  See N.Y. TAX LAW § 1814.  Plaintiffs, in fact, were arrested as part of a government effort to stop this criminal conduct, and were then made subject to the penalties allowed under §481(1)(b)(i).

Defendant argues, citing to the legislative history, that an alternative rationale to the penalties imposed by § 481(1)(b)(i) is to raise revenue for health care in New York.  See Mem. in Support, N.Y. 2000 Sess. Laws, at 1704, 1707, 1708; Sponsor's Mem., Bill Jacket, L 2000, ch. 262 at 3, 6, 7 (Dkt. No. 31, Exh. A).  However, this same history stresses that the proposed penalties

15

would "preserve" and "maintain" the existing revenue streams by deterring unlawful bootlegging that would otherwise impact the revenue stream.  Sponsor's Mem., Bill Jacket, L 2000, ch. 262 at 3, 8 (Dkt. No. 31, Exh. A).  From the foregoing, it is fair and logical to infer that the purpose assignable to § 481(1)(b)(i) is to penalize and deter criminal conduct.

Having analyzed § 481(1)(b)(i) in light of the Kennedy factors, the Court concludes that the section effectively operates as a criminal penalty.  The imposition of penalties pursuant to § 481(1)(b)(i) instead of, or concurrently with, the imposition of criminal penalties under § 1814 would not violate the Fifth Amendment's Double Jeopardy Clause.  See Halper, 490 U.S. 440. Where, as here, however, Defendant seeks to impose these penalties subsequent to a prior criminal prosecution for the same conduct, Plaintiffs' rights under the Fifth Amendment preclude the subsequent imposition.

### F.    Plaintiffs' Eight Amendment Claims

In light of the Court's conclusion that the subsequent imposition of fees pursuant to § 481(1)(b)(i) is barred, there is no need for the Court to reach the issues advanced under Plaintiffs' Eighth Amendment and Fourteenth Amendment claims.

## IV.    CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that Plaintiff's Motion to amend complaint (Dkt. No. 40) is **DENIED**; and it is further

**ORDERED**, that Plaintiffs' Motion for summary judgment (Dkt. No. 22) is **GRANTED** consistent with the above discussion and with regard to Plaintiffs Zaid and Kassem; and it is further

**ORDERED**, that Defendant's Cross-Motion for summary judgment (Dkt. No. 31) is **GRANTED in part**, and **DENIED in part**; and it is further

**ORDERED**, that Plaintiffs Adel and Mohamed's claims against Defendant are **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:      February 19, 2010

            Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

17